## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| GOLDEN GUERNSEY DAIRY, LLC, | ) | Case No. 13-10044 (KG) |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| CHARLES A. STANZIALE, JR., in his | ) | |
| capacity as Chapter 7 Trustee of Golden | ) | |
| Guernsey Dairy, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 14-50953 (KG) |
| | ) | |
| v. | ) | |
| | ) | |
| MILK072011, LLC, ANDREW NIKOU, | ) | |
| BRAD PARKS, and THE UNITED STATES | ) | |
| OF AMERICA through THE INTERNAL | ) | |
| REVENUE SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | **Re: Adv. Dkt. No. 18** |

## MEMORANDUM OPINION

The Court is ruling on the motion of Charles A. Stanziale, Jr. (the "Trustee"), chapter 7 trustee in the case of Golden Guernsey Dairy, LLC ("Golden Guernsey" or the "Debtor"), to disqualify the law firm of Clark Hill PLC ("Clark Hill") from representing defendants MILK072011, LLC ("MILK") and Andrew Nikou (together with MILK, the "MILK Defendants") in this adversary proceeding. The Trustee's motion seeks disqualification pursuant to Model Rules of Professional Conduct 1.7 and 1.9 based on Clark Hill's previous representation of the Debtor. For the reasons that follow, the Court will deny the Trustee's motion.

1

## JURISDICTION

"One of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). Accordingly, the Trustee's motion gives rise to a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2). *See, e.g., Century Indem. Co. v. Congoleum Corp.* (*In re Congoleum Corp.*), 426 F.3d 675, 684 (3d Cir. 2005); *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 340 B.R. 740, 744 (Bankr. D. Del. 2006).

## BACKGROUND

In late 2011, OpenGate Capital ("OpenGate"), a private equity firm, acquired certain dairy manufacturing businesses located in the Upper Midwest which would eventually come to be known as Golden Guernsey Dairy, LLC, the Debtor in the main chapter 7 proceeding. OpenGate formed MILK to act as the sole member of the Debtor. Mr. Nikou is affiliated with OpenGate and is the manager of MILK and the former manager of the Debtor.

On December 26, 2012, OpenGate, through the Debtor's sole member MILK, directed the Debtor to cease operations and promptly file a voluntary petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). On January 5, 2013, the Debtor closed its doors. On January 8, 2013 (the "Petition Date"), the Debtor filed its voluntary chapter 7 petition. On November 4, 2014, the Trustee initiated this adversary proceeding. In his complaint, the Trustee alleges that the MILK Defendants breached certain fiduciary duties owed to the Debtor and its creditors in connection with the Debtor's abrupt closure and bankruptcy filing. Specifically, the Trustee claims that the

MILK Defendants caused the Debtor to violate Wisconsin's Worker Adjustment and Retraining Notification Act (the "WARN Act") by failing to give laid-off workers 60 days' notice of the Debtor's closure, thus saddling the Debtor's bankruptcy estate with an approximately $1.5 million priority claim. Additionally, the Trustee asserts that the MILK defendants breached their fiduciary duties in connection with allegedly fraudulent pre-petition transfers to the Internal Revenue Service.

Since 2010, Clark Hill has represented OpenGate in a variety of legal matters. During that time, Clark Hill has also provided legal services to certain of OpenGate's portfolio companies. Clark Hill represented OpenGate in connection with the late-2011 Golden Guernsey acquisition and post-acquisition provided legal services directly to the Debtor. According to Clark Hill billing invoices, the firm charged the Debtor for legal services rendered as early as September 2011, and as late as October 2012. Clark Hill charged the Debtor a total of approximately $50,000.00 for legal services during this time period. Clark Hill did not charge the Debtor for any legal work completed after October 2012. While the Clark Hill invoices indicate that the firm advised the Debtor on a wide range of legal issues arising out of its day-to-day operations, Clark Hill did not charge the Debtor for any services related to the fiduciary duty, WARN Act, or fraudulent transfer allegations set forth in the Trustee's adversary complaint.

Even though Clark Hill did not charge the Debtor for any legal services rendered after October 2012, based on e-mail communications brought to the Court's attention by the Trustee, it appears that Clark Hill continued to provide the Debtor with legal advice through at least January 5, 2013, only days prior to the Petition Date. These

3

communications covered a range of operational issues which are not relevant to the issues in the adversary proceeding with one notable exception. On January 3, 2013, an attorney from Clark Hill sent an e-mail addressed to Brad Parks, the Debtor's president at the time, and Jay Yook, a partner at OpenGate, outlining various issues related to the Debtor's potential WARN Act liability arising out of its abrupt closure and corresponding mass layoff (the "WARN Act E-Mail"). The WARN Act E-Mail does not advise the Debtor of what action it should or should not take. It is informative rather than advisory and discusses the general nature of a WARN Act claim and possible defenses. Hearing Exhibit 1.

Clark Hill did not provide any legal services related to the Debtor's bankruptcy filing. At Clark Hill's suggestion, the Debtor retained the law firm of Womble Carlyle Sandridge & Rice, LLP ("Womble Carlyle") to prepare its bankruptcy petition and related pleadings and to represent it post-petition. The Womble Carlyle retention letter is dated January 7, 2013. Although Clark Hill did not produce any document indicating that it formally terminated its representation of the Debtor, it did not provide any legal services to the Debtor after the Debtor formally retained Womble Carlyle. Besides Clark Hill and Womble Carlyle, no other law firm rendered post-acquisition, pre-petition legal services to the Debtor of any significance.

On December 22, 2014, the MILK Defendants filed their motion to dismiss the Trustee's adversary complaint. On January 5, 2014, the Trustee filed his objection and cross motion to disqualify Clark Hill from acting as counsel to the MILK Defendants in this adversary proceeding. On January 21, 2014, the MILK Defendants filed their

4

objection to the Trustee's cross motion. On May 27, 2015, the Court heard argument on the Trustee's cross motion and accepted 23 documentary exhibits into evidence (the "Hearing"). Thereafter, the Court took the matter under advisement.

## ANALYSIS

Legal professionals practicing before the Court are bound by the Model Rules of Professional Conduct (the "Model Rules"). *See* D. Del. L.R. 83.6(d); *Meridian*, 340 B.R. at 744. "Although disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). "[T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Id.* In making this determination, the Court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.*

Based on their frequent use as a tactical device, "[m]otions to disqualify are generally disfavored and, therefore, require the movant to show clearly that continued representation would be impermissible." *Madukwe v. Delaware State Univ.*, 552 F. Supp. 2d 452, 457 (D. Del. 2008) (quotation marks and citations omitted). "Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) (citations omitted).

The Trustee has moved to disqualify Clark Hill from representing the MILK Defendants in this adversary proceeding pursuant to Model Rules 1.7 and 1.9. The Court will address each rule and the attendant issues in turn.

## A.    Model Rule 1.7

Model Rule 1.7(a) provides that:

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Model Rule 1.7 "arises out of the fundamental proposition that an attorney owes a duty of undivided loyalty to his or her client." *Carlyle Towers*, 944 F. Supp. at 346. *See also* Model Rule 1.7 cmt. 1 ("[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client"). But Clark Hill would owe such a duty to the Debtor only if it was in fact still a Clark Hill client.

Based on the record before the Court, while Clark Hill never sent the Debtor a formal termination letter, it is clear that Clark Hill's representation of the Debtor terminated, at the latest, upon the Debtor's retention of Womble Carlyle on January 7, 2013. Clark Hill's relationship with OpenGate predates its relationship with the Debtor. More to the point, Clark Hill's representation of the Debtor was essentially ancillary to

6

its representation of OpenGate given the Debtor's status as an OpenGate portfolio company. These facts, combined with the fact that Clark Hill advised the Debtor to retain alternative counsel for the specific purpose of commencing a chapter 7 liquidation, make it clear to the Court that the Debtor could not have reasonably expected that Clark Hill continued to act as its counsel. *Cf. Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 373 (D. Del. 2009) ("Under Delaware law, where there is no express contract or formal retainer agreement evidencing an attorney-client relationship, courts look at the contacts between the potential client and its potential lawyers to determine whether it would have been **reasonable for the 'client' to believe** that the attorney was acting on its behalf as counsel.") (emphasis in original).

In his reply brief, the Trustee argues that the Court should disqualify Clark Hill because its pre-petition representation of both the Debtor and OpenGate violat*ed* Model Rule 1.7. Trustee Reply Br. ¶ 12 [Adv. D.I. 37]. First, while the MILK Defendants (*i.e.* OpenGate) are certainly adverse to the Debtor now, there is no evidence that this was the case prior to the pre-petition termination of the attorney-client relationship between the Debtor and Clark Hill. Second, Clark Hill's pre-petition representation of the Debtor was never and is not now before this Court, thereby placing it beyond the Court's authority to sanction Clark Hill even if there were any transgressions.  Finally, if Clark Hill's concurrent pre-petition representation of both the Debtor and OpenGate violated Model Rule 1.7, its representation of the MILK Defendants in this adversary proceeding does not. The Court is at a loss as to how disqualifying Clark Hill from representing the MILK Defendants would further the ends Model Rule 1.7 is designed to serve.

The Debtor is a former client of Clark Hill. While Clark Hill has certain continuing duties of confidentiality and loyalty to the Debtor based on the fact that it is a former client, Model Rule 1.9 was drafted to address those duties. Model Rule 1.7 is simply inapplicable.

### B.    Model Rule 1.9

Model Rule 1.9(a) provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

The rule is designed to serve three purposes: (1) "to prevent even the potential that a former client's confidences and secrets may be used against him"; (2) "maintenance of public confidence in the integrity of the bar"; and (3) "a client has a right to expect the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162.

While the scope of the term "matter" is susceptible to varying interpretations, the comments to Model Rule 1.9 instruct that "[t]he scope of a 'matter' . . . depends on the facts of a particular situation or transaction." Model Rule 1.9, cmt. 2. "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id.* The comments to Model Rule 1.9 further counsel that matters are "substantially related . . . if they involve the same transaction or legal dispute _or_ if there otherwise is a

substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Model Rule 1.9, cmt. 3 (emphasis added). *See also Meridian*, 340 B.R. at 747 ("while the risk of a breach of client confidences is a *sufficient* condition for 'relatedness,' it is not a *necessary* one") (emphasis in original).

The Trustee argues that Clark Hill's current representation of the MILK Defendants is improper under Model Rule 1.9 because the firm's pre-petition representation of the Debtor included "the very Wisconsin WARN Act and working capital deficiencies that are central to the causes of action asserted in this adversary proceeding." Trustee Response & Cross Motion ¶ 39 [Adv. D.I. 18]. The Trustee further argues that Clark Hill obtained confidential information during its representation of the Debtor which will materially advance the MILK Defendants' position in this adversary proceeding.

The Trustee has not disclosed precisely what confidential information Clark Hill obtained during its representation of the Debtor, nor is he required to. *Madukwe*, 552 F. Supp. 2d at 461 (citing Model Rule 1.9, cmt. 3); *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987). "Instead, '[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.'" *Madukwe*, 552 F. Supp. 2d at 461 (quoting Model Rule 1.9, cmt. 3). *See also Satellite Fin. Planning*, 652 F. Supp. at 1283 ("[t]he Court . . . should undertake 'a realistic appraisal of the possibility that confidences had been disclosed in

the one matter which will be harmful to the client in the other'"). This information may include "playbook" information such as "what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject." *Madukwe*, 552 F. Supp. 2d at 462 (quoting *Webb v. E.I. du Pont de Nemours & Co.*, 811 F. Supp. 158, 162 (D. Del. 1992)). But, the Court "should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Satellite Fin. Planning*, 652 F. Supp. at 1284.

Clark Hill's representation of the Debtor arose by virtue of the Debtor's status as an OpenGate portfolio company. OpenGate itself certainly had independent access to any "confidential" information the Debtor may have disclosed to Clark Hill. Indeed, OpenGate almost certainly had access to considerably more of the Debtor's confidential information than Clark Hill. OpenGate personnel were copied on most of the e-mail communications between Clark Hill and the Debtor introduced by the Trustee at the Hearing, including the WARN Act E-Mail. The Court is simply not convinced that the Debtor had any expectation that information provided to Clark Hill in the course of its representation of the Debtor would be kept confidential from OpenGate. The MILK Defendants are essentially proxies for OpenGate in this adversary proceeding. Accordingly, the Court finds that Clark Hill is not in possession of the sort of confidential information Model Rule 1.9 was meant to protect. *See* Model Rule 1.9, cmt. 3 ("[i]nformation that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying").

Further, the Court is not convinced that the subject matter of Clark Hill's representation of the Debtor is substantially related to the issues raised by the Trustee in his complaint. "Disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Madukwe*, 552 F. Supp. 2d at 458. In other words, has Clark Hill switched sides? *See* Model Rule 1.9, cmt. 2.

The Trustee's contention that Clark Hill represented the Debtor with respect to WARN Act issues is based in large part on the Warn Act E-Mail. The WARN Act E-Mail is not quite the "smoking gun" the Trustee makes it out to be. In the WARN Act E-mail, a Clark Hill attorney merely provided information and limited insight on an issue affecting *both* of her clients. There is no indication that OpenGate and the MILK Defendants were adverse to the Debtor on WARN Act and "working capital deficiencies" issues at the time the WARN Act E-Mail was sent (or any other time pre-petition). Nor is there any indication that Clark Hill had picked a side with respect to the complex fiduciary duty, WARN Act, and fraudulent transfer issues raised in the Trustee's complaint—to the extent Clark Hill had any inkling that these issues existed at all. Finally, there is no indication that the Debtor had any expectation that Clark Hill would represent it with respect to the issues raised in the Trustee's complaint or any issues substantially related thereto.

A mere reference to the WARN Act is not enough to convince the Court that Clark Hill's representation of the Debtor involved the same transaction or dispute, or that Clark

11

Hill obtained the sort of confidential information that Model Rule 1.9 is meant to protect.

Nor are the billing invoices and e-mail communications submitted by the Trustee, which evidence appears to be a relatively limited representation with respect to day-to-day operational and financing issues. In other words, Clark Hill could not "be justly regarded as . . . changing . . . sides in the matter in question." Model Rule 1.9, cmt. 2. Thus, disqualification of Clark Hill pursuant to Model Rule 1.9 is not warranted.

## CONCLUSION

A party's right to its chosen counsel is not absolute. *Int'l Bus. Mach. Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978). "Indeed, the courts have gone so far as to suggest that doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification." *Id.* But the Trustee has not presented a convincing case for disqualification. The Court is satisfied that Clark Hill's representation of the MILK Defendants in this adversary proceeding does not violate the letter or spirit of Model Rules 1.7 and 1.9. Therefore, the Trustee's cross motion to disqualify Clark Hill as counsel to the MILK Defendant's is denied. The Court will enter a separate order.[1]

Dated: June 12, 2015

KEVIN GROSS, U.S.B.J.

---

[1] In his cross motion to disqualify Clark Hill, the Trustee argued that the Court should draw an adverse inference against the MILK Defendants based on their alleged failure to cooperate with the Trustee's discovery requests. Based on the record before the Court, the Trustee's allegations are just that, largely unsupported allegations. Accordingly, the Court declines to draw an adverse inference against the MILK Defendants.

12